JUSTICE TRIEWEILER
dissenting.
I dissent from the majority opinion.
I conclude that there are genuine factual issues regarding the nature of the services the defendants were retained to perform and whether they exercised reasonable care in the performance of those services. The District Court erred by resolving factual issues and setting forth its findings as if they were undisputed facts. The majority’s opinion does the same thing.
Seeley’s cause of action is based on his contention that on Friday, November 9, 1990, he delivered to the firm of Luxan and Murfitt a signed earnest money agreement and a draft in the amount of $1000 to secure his right to purchase the Placer Center in Helena, Montana, on or before November 16, 1990. He contends that he asked the law firm to see if there were any liens against the building, or other complications that would make purchase of the building inadvisable, but that the firm was specifically instructed that if no problems were discovered by the beginning of business on Tuesday morning, the *524 earnest money and the written agreement were to be delivered to Linda Stoll-Anderson so that the right to purchase the building could be secured while farther investigation was conducted. He contends that it was his plan that if problems were discovered after his earnest money in the amount of $1000 was delivered, but before purchase of the building was accomplished, he was prepared to forfeit his earnest money. However, he did not want to lose the opportunity to purchase the building, and it is his contention that he made that clear to his attorneys.
It is also Seeley’s contention that after he left town, his attorneys failed to perform as they had been instructed, did not deliver the earnest money or the written agreement on time, and, therefore, that he lost the opportunity to profit from the purchase of the Placer Center.
The District Court entered summary judgment for the defendants based on its finding that the following facts were true:
1. That Seeley told his attorneys to deliver the agreement and check to the County only after they investigated possible complications with the title to the building; and
2. That at no time did Seeley advise his attorneys that time was of the essence in performance of the services they were retained to perform.
Based on these findings, the District Court concluded that the defendants did not breach their duty to Seeley and, therefore, are entitled to judgment as a matter of law.
The majority opinion accepts the same findings as undisputed facts and arrives at the same conclusion. However, the nature of Seeley’s instructions to his attorneys and, therefore, the nature of their duty to him, is factually disputed based on the record before us.
For example, Nelson Seeley filed an affidavit in opposition to the defendants’ motion for summary judgment in which he testified to the following facts:
2. On Friday, November 9, 1990, Linda Stoll-Anderson agreed to let me have over the weekend to have my lawyers consider matters pertaining to title. Linda Stoll-Anderson knew that I had taken the earnest agreement which I signed in her presence, which had been prepared by the County in consultation with one of its deputy county attorneys, and my signed check of $1000 earnest money and delivered it to the defendants. Linda Stoll-Anderson said she would sign the earnest agreement when it was delivered by Mr. Davis and indicated that that was acceptable but they would *525 need the check and earnest agreement first thing Tuesday morning (November 13, 1990).
3. I then delivered the earnest agreement and $1000 check to the defendants (Gary Davis) and told them precisely of my meeting with Linda Stoll-Anderson and that the check and earnest agreement needed to be delivered to the County first thing Tuesday morning. I understood my attorneys would have some time, at least until first thing Tuesday morning, to look at title issues. They indicated in my conversations with them on Friday, November 9, and Monday, November 12, that they had not found any difficulties or problems, vis-a-vis title. Indeed, Mr. Davis told me on Monday, November 12,1990, that because the building had been condominiumized such was a real advantage for me.
4. While a specific time, such as 8:01 a.m. or 8:02 a.m., was not specified to Mr. Davis or Mr. Murfitt, I made it very, very clear that they needed to make sure that the check and earnest agreement were delivered to the County first thing Tuesday morning, not 10:00 a.m.; not 12:00 noon. Neither of the defendants ever asked me for any more specificity, but both seemed to understand precisely what I was telling them.
6.1 never asked the attorneys to do what would be tantamount to an abstract of title, which is what they seem to suggest in their brief (page 10). I simply wanted them to double check to see if there were some other liens against the building that we may not be aware of otherwise and I know Mr. Davis was doing that on Friday, 11/9/90, because he told me he had done so. We also specifically discussed and the attorneys concede that in the earnest agreement we had until Friday, 11:59 a.m., to go any further with the purchase of the building but that in the meantime by delivering the earnest agreement and check to the County first thing Tuesday morning the building would be secured for me.
8. ... There certainly was a time constraint given to my attorneys. If the defendants did not give one to the person at the title company that was their fault, not mine.
Seeley’s affidavit directly contradicts the District Court’s findings which are again set forth as fact in the majority opinion. The factual issues raised by his affidavit, and his deposition testimony to the same effect, were sufficient, without more, to overcome the defen *526 dants’ motion for summary judgment. However, his version of events was also corroborated by former County employees. Renee Podel stated in her affidavit that in November 1990 she was the executive secretary for the County Commissioners. The earnest agreement was prepared on her computer. She recalled Seeley’s meeting with Linda Stoll-Anderson on the afternoon of November 9, 1990, and recalled him telling Stoll-Anderson of his intention to buy the Placer building. She also stated that on Tuesday, November 13, she remembered that Stoll-Anderson left the County Commission meeting and upon her return seemed upset that the earnest agreement and check had not yet been delivered. She quoted Stoll-Anderson as saying “I don’t understand why they haven’t been delivered yet.” Stoll-Anderson testified that it was during this break during the County Commission meeting that she called the Luxan and Murfitt firm and advised Murfitt that another party was coming to purchase the property and that it would be sold on a first-come, first-served basis.
Mary Ann Gregory stated by affidavit that on November 9, 1990, she was an administrative secretary at the Lewis and Clark County offices. She recalled overhearing a conversation between Seeley and Stoll-Anderson on that date in which Seeley expressed his interest in purchasing the Placer Center and offered to give Stoll-Anderson a check for $1000 and the earnest agreement. She then related the following conversation:
She [Stoll-Anderson] told him that she did not need the check and agreement at that time but she needed to have them first thing Tuesday morning. Mr. Seeley told Linda that he was going to give the check and agreement to his attorney, Mr. Murfitt. Linda Stoll-Anderson said that would be fine but again to make sure she got the agreement and the check first thing Tuesday morning and she would sign the agreement and present it to the Commission. I also heard Linda Stoll-Anderson tell Mr. Seeley that buying the building was a “first-come, first-served” situation.
I remember Linda Stoll-Anderson calling an individual whom she referred to as Howdy Murfitt during a break in the meeting on Tuesday, November 13, 1990. ... I also remember Linda Stoll-Anderson told this person that he (Howdy) better hurry up and get the check and agreement to her or Mr. Seeley would lose his interest in the building. She also told him (Howdy) it was first-come, first-served. It was a very short conversation after which Linda StollAnderson returned to the meeting room.
*527 (Emphasis added.)
The majority opinion states that:
[I]f Seeley’s intent was to secure his right to purchase the building regardless of the status of the title, he could have tendered the check and agreement to Stoll-Anderson himself on Friday, before leaving for Canada. Instead, he transferred the documents to the attorneys, with instructions to investigate the title for major problems.
The answer to that observation is, first of all, that it is simply an argument regarding weight to be given to Seeley’s testimony. It is not this Court’s function when reviewing summary judgments to weigh conflicting evidence. Furthermore, Seeley fully explained why he put off delivering the earnest agreement until Tuesday morning. He testified that if there were obvious problems with the building that could be detected between Friday afternoon and Tuesday morning, it would have been his preference to avoid losing the $1000, but that if no major problems were detected during that time, he was willing to risk the $1000 rather than risk losing the building itself. I find nothing illogical about that approach, and neither is it inconsistent with Seeley’s basic claims.
In addition to the testimony cited in the preceding paragraphs, Joel Guthals, a licensed attorney who practices in Billings with an emphasis in the areas of business and commercial law, expressed his opinion by deposition that the defendants did not exercise a reasonable degree of professional care and skill in the performance of their services for Seeley. His opinion was based on the deposition testimony of the parties and other persons involved in the real estate transaction.
Even assuming that all of the cited testimony is controverted, there are, at most, seriously contested issues of fact related to the liability of the defendants. It is not appropriate to resolve issues of fact by summary judgment. Summary judgment should be granted only where there are no issues of fact and where a party is entitled to judgment as a matter of law. The issues and facts in this case are very clearly defined. Seeley’s claims are supported by substantial evidence and the District Court’s conclusion to the contrary should be reversed.
For these reasons, I dissent from the majority opinion.